## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## ANN ARBOR DIVISION

| | | |
|---|---|---|
| Mark W. Dobronski | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 21-12549 |
| vs. | ) | |
| | ) | |
| AT&T Corp. and DIRECTV, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendants AT&T Corp. and DIRECTV, LLC (collectively the "Defendants") hereby remove this action from the Circuit Court for the 22nd Judicial Circuit of the State of Michigan, County of Washtenaw to the United States District Court for the Eastern District of Michigan, Ann Arbor Division, pursuant to 28 U.S.C. §§ 1331, 1367, 1441 and 1446. In support of removal, Defendants state as follows:

1.     By complaint dated October 7, 2021, Plaintiff Mark W. Dobronski ("Dobronski") purportedly instituted this action against the Defendants. A true and correct copy of the complaint ("Complaint") and writ of summons ("Summons") are attached hereto as Exhibit A. The Complaint has been assigned docket number 21-001075-NZ in state court.

744499488.1 28-Oct-21 13:15

2.     Defendants first received a copy of the Complaint on October 7, 2021. As reflected on the cover sheet to Exhibit A, at that time, the Complaint was served on The Corporation Company in Plymouth, MI.

3.     No other proceedings have been held in the Circuit Court for Washtenaw County, Michigan in this action and the Summons and Complaint constitute all process and pleadings served upon Defendants in this action. No Defendant has filed a responsive pleading to the Complaint.

4.     The Complaint asserts claims against the Defendants for allegedly violating federal law by using automated equipment to place solicitation calls to Plaintiff Dobronski without his permission and despite him being on the do-not-call list. Comp. at ¶¶ 49-89. Dobronski alleges that Defendants violated multiple sections of the federal law that prohibits such conduct, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and its implementing regulations. Comp. at ¶¶ 82-102.  The Complaint also alleges similar claims arising under Michigan state law. Comp. at ¶¶ 103-108.

5.     Each of the claims arises out of the same basic allegations. Dobronski alleges that he registered his telephone number on the national do-not-call list. Comp. at ¶ 29. Despite that, he claims, he received calls that attempted to sell Defendants' products while using inaccurate caller ID information. *Id.* at ¶¶ 49-89.

Dobronski alleges that the calls continued even after he asked the caller to stop. *Id.* at ¶ 32.

6.     Because Dobronski's complaint includes a claim against Defendants under the federal TCPA, this action arises under the "laws . . . of the United States" over which this Court has original jurisdiction. 28 U.S.C. § 1331. Accordingly, this action is removable to this Court under 28 U.S.C. § 1441. *See Mims v. Arrow Fin. Servs. LLC*, 565 U.S. 368 (2012).

7.     To the extent that Dobronski asserts claims under Michigan state law, this Court has supplemental jurisdiction over his claims because such claims are so related to Dobronski's federal claim that they are part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367. Indeed, the state and federal claims both rely on the exact same theory—that Defendants violated telemarketing requirements by making unauthorized and inappropriate calls to Dobronski.

8.     The United States District Court for the Eastern District of Michigan is a proper venue for removal because it is the federal judicial district in which the complaint alleges the events and/or conduct giving rise to the claims occurred, namely Dobronski's receipt of the calls at issue.[1] Additionally, the court where the state action was brought and is pending is located within the jurisdiction of the

---

[1] Dobronski alleges he is a resident of Washtenaw County. Complaint at ¶ 2.

3

United States District Court for the Eastern District of Michigan, and therefore this is the proper district court to which the action should be removed.

9.      All of the defendants are parties to this Notice of Removal.

10.      Accordingly, pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely and proper because thirty days have not expired since any defendant received the Complaint and because all defendants have joined in the removal.

11.      Pursuant to 28 U.S.C. § 1446(d), Defendants have this same date given written notice of this filing to Dobronski and filed a true and correct copy of a Notice of Filing of Notice of Removal ("Notice of Filing") with the Clerk of the Circuit Court for the State of Michigan, Washtenaw County. A copy of such Notice of Filing (without attachments) is attached hereto as Exhibit B.

12.      By removing this matter to this Court, Defendants do not waive their rights to assert any and all defenses and/or objections in this action, including any right to assert that courts in the State of Michigan lack jurisdiction over these claims.

13.      The undersigned is counsel for, and is duly authorized to effect removal on behalf of, Defendants.

WHEREFORE, Defendants respectfully request that this action be removed from the Circuit Court of the 22nd Judicial District of the State of Michigan for the County of Washtenaw and that this Court take jurisdiction over further proceedings.

Dated: October 28, 2021                    Respectfully submitted,


                                           By: /s/ Roger P. Meyers
                                           _____
                                           BUSH SEYFERTH PLLC
                                           Roger P Meyers (P73255)
                                           100 W. Big Beaver Rd. Suite 400
                                           Troy, Michigan 48084
                                           (248) 822-7800

                                           *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I, Roger P. Meyers, certify that on October 28, 2021 I caused a copy of the

foregoing to be served upon the following by email and U.S. mail:

Mark W. Dobronski
P.O. Box. 85547
Westland, MI 48185-0547
Tel: 734-330-9671
Email: markdobronski@yahoo.com

/s/ Roger P. Meyers

6

# Exhibit A

 **CT Corporation**

**Service of Process Transmittal**
10/07/2021
CT Log Number 540382122

**TO:**  Jill M Calafiore, Rm 3A119A
AT&T Corp.
One AT&T Way-
Bedminster, NJ 07921-

**RE:**  **Process Served in Michigan**

**FOR:**  AT&T Corp.  (Domestic State: NY)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | MARK W. DOBRONSKI, an individual vs. AT&T CORP. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Verification |
| **COURT/AGENCY:** | 22nd Circuit Court - Washtenaw County, MI<br>Case # 21001075NZ |
| **NATURE OF ACTION:** | Violation of the Telephone Consumer Protection Act |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Company, Plymouth, MI |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 10/07/2021 at 14:26 |
| **JURISDICTION SERVED :** | Michigan |
| **APPEARANCE OR ANSWER DUE:** | Within 21 days after receipt |
| **ATTORNEY(S) / SENDER(S):** | Mark W. Dobronski<br>Post Office Box 85547<br>Westland, MI 48185-0547<br>734-641-2300 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 10/08/2021, Expected Purge Date: 10/18/2021<br><br>Image SOP<br><br>Email Notification,  Jill M Calafiore  jcalafiore@att.com |
| **REGISTERED AGENT ADDRESS:** | The Corporation Company<br>40600 Ann Arbor Road E<br>Suite 201<br>Plymouth, MI 48170<br>877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

 **CT Corporation**

**Service of Process Transmittal**
10/07/2021
CT Log Number 540382122

**TO:**   Jill M Calafiore, Rm 3A119A
AT&T Corp.
One AT&T Way-
Bedminster, NJ 07921-

**RE:**   **Process Served in Michigan**

**FOR:**   AT&T Corp.  (Domestic State: NY)

**DOCKET HISTORY:**

| DOCUMENT(S) SERVED: | DATE AND HOUR OF SERVICE: | TO: | CT LOG NUMBER: |
| --- | --- | --- | --- |
| Summons, Complaint | By Process Server on 01/21/2021 at 11:12 | Jill M Calafiore, Rm 3A119A AT&T Corp. | 538925622 |

| Approved, SCAO | | | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |

| **STATE OF MICHIGAN** | | **SUMMONS** | **CASE NO.** |
| 22nd | **JUDICIAL DISTRICT**<br>**JUDICIAL CIRCUIT**<br>**COUNTY PROBATE** | | 21-001075-NZ<br><br>JUDGE CAROL KUHNKE |

| **Court address** | **Court telephone no.** |
| 101 EAST HURON STREET    ANN ARBOR, MICHIGAN 48104-1446 | (734) 222-3001 |

| Plaintiff's name(s), address(es), and telephone no(s).<br>MARK W. DOBRONSKI    TEL: (734) 330-9671<br>PO BOX 85547<br>WESTLAND, MI 48185-0547 | | Defendant's name(s), address(es), and telephone no(s).<br>AT&T CORP.<br>40600 ANN ARBOR RD E STE 201<br>PLYMOUTH, MI 48170-4675<br>and<br>DIRECTV, LLC<br>40600 ANN ARBOR RD E STE 201<br>PLYMOUTH, MI 48170-4675 |
| Plaintiff's attorney, bar no., address, and telephone no.<br>PRO SE | v | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____ .

The action ☐ remains ☐ is no longer  pending.

Summons section completed by court clerk.    **SUMMONS**

**NOTICE TO THE DEFENDANT**: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date*<br>01-05-2022 | Court clerk /s/ Kim Plumb<br>October 5 2021 |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE 22ND JUDICIAL CIRCUIT**
**WASHTENAW COUNTY**

**MARK W. DOBRONSKI,**
an individual,

Case No. 21-001075-NZ

JUDGE CAROL KUHNKE

Plaintiff,

v.

**AT&T CORP.,**
a New York corporation; and,

**DIRECTV, LLC,**
a California limited liability company,

Defendants.

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 330-9671
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

## COMPLAINT

NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria persona*, and for his complaint against Defendants alleges:

1. This matter arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.*, the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L. § 484.101, *et seq.*, the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.101, *et seq.*, and the Michigan Consumer Protection Act ("MCPA"), M.C.L. § 445.901, *et seq.*

FILED IN Washtenaw County Trial Court; 10/7/2021 9:43 AM

## **Parties**

2. Plaintiff is an individual, of the age of majority, a citizen of the United States of America, has a residence and conducts business in Lima Township, Washtenaw County, Michigan, and has a place of business, and conducts business in the City of Westland, Wayne County, Michigan.

3. Upon information and belief, Defendant AT&T INC. ("AT&T") is a corporation organized and existing under the laws of the State of New York, which is qualified and registered to do business in the State of Michigan, with a registered office located at 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170-4675.

4. Upon information and belief, Defendant DIRECTV, LLC ("DirecTv") is a limited liability company organized and existing under the laws of the State of California, which is qualified and registered to do business in the State of Michigan, with a registered office located at 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170-4675.

## **Jurisdiction**

5. This Court has jurisdiction over the subject matter of this complaint pursuant to 47 U.S.C. § 227(b)(3), 47 U.S.C. § 227(c)(5), and M.C.L. § 600.601.

6. This Court has general jurisdiction over Defendants AT&T and DirecTv pursuant to M.C.L. § 600.711 as a result of each of the defendants carrying on of a continuous and systematic part of its general business within the state.

7. Alternatively, this Court has limited personal jurisdiction over Defendants AT&T and DirectTV pursuant to M.C.L. § 600.715 as a result of: the transaction of any business within the state; the doing or causing an act to be done, or consequences to occur, in the state resulting in

2

an action for tort; the ownership, use, or possession of real or tangible personal property situated within the state; entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.

## Venue

8. Venue is proper in this Court, pursuant to M.C.L. § 600.1629(1)(b)(i), as the tortious or illegal telephone calls complained of herein were received in Washtenaw County, Michigan.

## General Allegations

9. In response to widespread public outrage over intrusive telemarketing calls to homes and businesses, the United States Congress acted to prevent entities, like Defendants, from invading American citizen's privacy and to prevent abusive "robo-calls" by enacting the TCPA.

10. According to the Federal Communications Commission ("FCC"), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls."

11. Congress explicitly has found that robo-calling is an invasion of privacy.

12. In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the bill, explained, "computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year. It is telephone terrorism, and it has got to stop...." See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 17 FCC Rcd. 17459, 17474, fn. 90 (2002), quoting 137 Cong.

3

Rec. 30,821-30,822 (Nov. 7, 1991).

13. Congress found that telemarketing fraud has become a problem of such magnitude

that the resources of the Government alone are not sufficient to ensure adequate consumer

protection from such fraud; consumers and others are estimated to lose in excess of $40 billion

a year in telemarketing fraud; and consumers are victimized by other forms of telemarketing

deception and abuse.

14. During the first nine months of 2021 alone, over 38.6 billion robocalls were placed

nationwide, equaling approximately 117.9 calls per man, woman, and child. [Source:

www.robocallindex.com].

15. In enacting the TCPA, Congress intentionally created a legally enforceable bounty

system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to

act as "private attorneys general" in enforcing federal law.

16. The TCPA, at 47 U.S.C. § 227(b)(1), promulgates in relevant part as follows:

> "Restrictions on use of automated telephone equipment
>
> (1) Prohibitions  It shall be unlawful for any person within the
> United States, or any person outside the United States if the
> recipient is within the United States — . . .
>
> (B) to initiate **any telephone call to any residential telephone
> line using an artificial or prerecorded voice to deliver a
> message without the prior express consent of the called party**,
> unless the call is initiated for emergency purposes, is made solely
> pursuant to the collection of a debt owed to or guaranteed by the
> United States, or is exempted by rule or order by the Commission
> under paragraph (2)(B);" . . . . [Emphasis added.]

17. Pursuant to authority delegated by Congress to the FCC under the TCPA at 47 U.S.C.

§ 227(b)(2), the FCC has adopted regulations to implement and carry out the TCPA.

4

18. The TCPA regulations, at 47 C.F.R. § 64.1200, promulgate in relevant part:

"(a) No person or entity may: . . .

(3) Initiate **any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party**, unless the call;

(i) Is made for emergency purposes;

(ii) Is not made for a commercial purpose;

(iii) Is made for a commercial purpose but does not include or introduce an advertisement or constitute telemarketing;

(iv) Is made by or on behalf of a tax-exempt nonprofit organization; or

(v) Delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103. . . .

(b) **All artificial or prerecorded voice telephone messages shall**:

(1) At the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under which the entity is registered to conduct business with the State Corporation Commission (or comparable regulatory authority) must be stated;

(2) During or after the message, state clearly the telephone number (other than that of the autodialer or prerecorded message player that placed the call) of such business, other entity, or individual. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges. For telemarketing messages to residential telephone subscribers, such telephone number must permit any individual to make a do-not-call request during regular business hours for the duration of the telemarketing campaign; and

(3) In every case where the artificial or prerecorded voice telephone message includes or introduces an advertisement or

5

constitutes telemarketing and is delivered to a residential telephone line or any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii), provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism, within two (2) seconds of providing the identification information required in paragraph (b)(1) of this section...

(d) **No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber** unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. **Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request** within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a

6

> telemarketing call is made or an affiliated entity.
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes **must** provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted..." [Emphasis added.]

19. The TCPA regulations at, 47 C.F.R. § 64.1601, additionally promulgate in relevant part:

> "(e) Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) **must** transmit caller identification information.
>
> (1) For purposes of this paragraph, **caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer**. It shall not be a violation of this paragraph to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller on behalf of which the telemarketing call is placed and the seller's customer service telephone number. **The telephone number so provided must permit any individual to make a do-not-call request during regular business hours.**
>
> (2) Any person or entity that engages in telemarketing is prohibited from blocking the transmission of caller identification information." [Emphasis added.]

20. The TCPA, at 47 U.S.C. § 227(b)(3), provides for a private right of action, as follows:

> "PRIVATE RIGHT OF ACTION. **A person or entity** may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State –
>
> (A) an action based on a violation of this **subsection or the regulations prescribed under this subsection** to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages **for each such violation**, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." [Emphasis added.]

21. Pursuant to Congressional mandate set forth at 47 U.S.C. § 227(c)(1), the FCC

adopted regulations establishing a national "do not call" database and prohibiting any person

from making or transmitting a telephone solicitation to the telephone number of any subscriber

included in such database, which regulations are set forth at 47 C.F.R. § 64.1200(c), and

promulgate in relevant part:

"No person or entity shall initiate any telephone solicitation to: .
. .

"(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. . . . ."

22. Additionally, the TCPA, at 47 U.S.C. § 227(c)(5), as it relates to telephone numbers

appearing of the do-not-call list, provides for a private right of action, as follows:

"Private right of action. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

8

(B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

23. The MTCCCA, at M.C.L. § 484.125, promulgates in relevant part as follows:

"A caller shall not use a telephone line to contact a subscriber at the subscriber's residence, business, or toll-free telephone number to do [] the following: ...

(2) A caller shall not use a telephone line to contact a subscriber at the subscriber's residence, business, or toll-free telephone number to do either of the following:

(a) Deliver a recorded message for the purpose of presenting commercial advertising to the subscriber, unless either of the following occurs:

(i) The subscriber has knowingly and voluntarily requested, consented, permitted, or authorized the contact from the caller.

(ii) The subscriber has knowingly and voluntarily provided his or her telephone number to the caller.

(b) Deliver or attempt to deliver intrastate commercial advertising if the caller activates a feature to block the display of caller identification information that would otherwise be available to the subscriber...

(5) A subscriber contacted by a caller in violation of this section

9

may bring an action to recover damages of $1,000.00, together
with reasonable attorneys' fees...

(9) A caller who violates this section is guilty of a misdemeanor,
punishable by a fine of $1,000.00 or imprisonment for 10 days, or
both."

24. The MHSSA, at M.C.L. § 445.111a(5), promulgates:

". . . A telephone solicitor shall not make a telephone solicitation
to a residential telephone subscriber whose name and residential
telephone number is on the then-current version of the federal [do-
not-call] list."

25. The MHSSA, at M.C.L. § 445.111b, promulgates in relevant part:

"(1) At the beginning of a telephone solicitation, a person making
a telephone solicitation to a residential telephone subscriber shall
state his or her name and the full name of the organization or other
person on whose behalf the call was initiated and provide a
telephone number of the organization or other person on request.
A natural person must be available to answer the telephone number
at any time when telephone solicitations are being made..."

26. The MHSSA, at M.C.L. § 445.111c, promulgates in relevant part as follows:

" (1) It is an unfair or deceptive act or practice and a violation of
this act for a telephone solicitor to do any of the following:...

(f) Fail to comply with the requirements of section 1a or 1b.

(2) ... [A] person who knowingly or intentionally violates this
section is guilty of a misdemeanor punishable by imprisonment for
not more than 6 months or a fine of not more than $500.00, or
both.

(3) A person who suffers loss as a result of violation of this section
may bring an action to recover actual damages or $250.00,
whichever is greater, together with reasonable attorney fees."

27. The MCPA, at M.C.L. § 445.903, promulgates in relevant part as follows:

(1) Unfair, unconscionable, or deceptive methods, acts, or

10

practices in the conduct of trade or commerce are unlawful and are defined as follows: ...

(b) Using deceptive representations or deceptive designations of geographic origin in connection with goods or services...

(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions...

(w) Representing that a consumer will receive a rebate, discount, or other benefit as an inducement for entering into a transaction, if the benefit is contingent on an event to occur subsequent to the consummation of the transaction...."

28. The MCPA, at M.C.L. § 445.911, provides for a private right of action, as follows:

"(1) Whether or not a person seeks damages or has an adequate remedy at law, a person may bring an action to do either or both of the following:

(a) Obtain a declaratory judgment that a method, act, or practice is unlawful under section 3.

(b) Enjoin in accordance with the principles of equity a person who is engaging or is about to engage in a method, act, or practice that is unlawful under section 3.

(2) Except in a class action or as otherwise provided in subsection (3), a person who suffers loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees...."

29. Plaintiff's residential telephone number (734-XXX-2424) is listed on the National Do Not Call Registry maintained by the U.S. Federal Trade Commission pursuant to 16 C.F.R. Part 310 and has been so listed continuously since at least June 29, 2003 and at all times relevant hereto.

30. By listing his cellular telephone number on the National Do Not Call Registry, Plaintiff has given constructive notice to the world, including Defendants, that Plaintiff does not

11

wish to receive telephone solicitations or robocalls at his cellular telephone number.

31. Additionally, Plaintiff has expressly made formal requests to Defendants AT&T and DirecTv on prior occasions, including on February 11, 2021, that Defendants place, *inter alia*, Plaintiff's residential telephone number (734-XXX-2424) upon Defendants' internal do-not-call lists, which Defendants are required to maintain and honor pursuant to 47 C.F.R. § 64.1200(d)(3) and 16 C.F.R. § 310.4(D)(3)(iii).

32. The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780, at *26 ¶ 73 (FCC July 10, 2015).

33. At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendants.

34. At no time has Plaintiff provided permission to the Defendants to engage in telephone solicitation with the Plaintiff via telephone.

34. At no time has Plaintiff provided Defendants with prior express written consent to engage in telephone solicitation with the Plaintiff via telephone.

35. Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

12

36. Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.

37. The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 20 FCC Rcd 13664, 13667, ¶ 7 (2005).

38. When considering individual corporate officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason,* No. 10-10010, 2013 U.S. Dist. LEXIS 155985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participating in or personally authorized the conduct found to have violated the statute.") (internal citation omitted); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D.MD. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

39. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

40. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff

13

suffered the injury of the occupation of the telephone line by unwelcome calls, making the phone

unavailable for legitimate callers or outgoing calls, including emergency calls, when the

telephone line was seized by Defendants' calls.

41. For each and every call alleged herein initiated to Plaintiff's telephone line,

Defendants caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls

that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for

unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected

the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone,

which features are designed to inform the user of important missed communications.

42. Each and every call alleged herein placed by Defendants without consent to

Plaintiff's telephone line resulted in the injury of a trespass to Plaintiff's chattel, namely

Plaintiff's telephone line and its telephone services.

43. For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean

that the violator knew that he was doing the act in question, in this case, initiating a telephone

solicitation, irrespective of any intent to violate the law. A violator need not know that his

action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating

circumstance.

44. Defendants are fully cognizant of the fact that illegal robocalls were being placed to

consumers hawking Defendants's products and/or services, as Defendants has been sued

numerous times in federal and state courts across the United States, yet Defendants apparently

took no action to curtail the illegal telemarketing activities.

45. Defendants have been previously fined $5.3 million (which amount was subsequently

14

negotiated down to $3.21 million) by the U.S. Federal Trade Commission for violating federal "do not call" regulations; at the time, the action was noted as being the largest civil fine ever imposed by the FTC for a violation of consumer protection laws.

46. To the extent that the illegal telemarketing activities are being initiated by third-party telemarketers hired by Defendants to hawk Defendants' products and/or services, Defendants have ratified said conduct by accepting the fruits and benefits of said illegal telemarketing activities; to wit, additional revenue-generating customers.

47. At all times, Defendants had the ability to control its telemarketing activities, including curtailing said telemarketing activities, but Defendants apparently took no action to do so.

48. Plaintiff's home, office, and wireless telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God. Some of the calls received by Plaintiff are blatant scams, including, *inter alia,* calls purportedly from the Internal Revenue Service advising that arrest warrants have been issued against Plaintiff; calls advising that Plaintiff has won a "free" Caribbean resort vacation; and, calls advising that Plaintiff's credit card interest rate is being lowered to zero percent.

### Allegations Specific to this Case

### Call Number 1

49. On March 26, 2021, at approximately 12:14 P.M., Defendants or Defendants's third-party telemarketer initiated or caused to be initiated a call to Plaintiff's residential telephone number (734-XXX-2424).

50. The caller identification number displayed was 734-354-2227 and no caller identification name was displayed.

51. Upon answering the incoming telephone call, a live telemarketer identified herself as being Sarah with AT&T/DirecTV.

52. Sarah was calling regarding a $40.00 discount or rebate to be applied to Plaintiff's DirecTv account and was seeking Plaintiff's account number information.

53. Plaintiff does not have, and never has had, any account with DirecTv.

54. Immediately after the call terminated, Plaintiff dialed the telephone number appearing on the caller identification (734-254-2227) and received a recording stating "the number you have called is not in service."

## **Call Number 2**

55. On March 29, 2021, at approximately 9:25 A.M., Defendants or Defendants's third-party telemarketer initiated or caused to be initiated a call to Plaintiff's residential telephone number (734-XXX-2424).

50. The caller identification number displayed was 734-479-3407, and the caller identification name displayed was "WYANDOTTE MI".

51. Upon answering the incoming telephone call, a live telemarketer identified herself as being Sarah with AT&T/DirecTV.

52. Sarah was calling again regarding a $40.00 discount or rebate to be applied to Plaintiff's DirecTv account and was seeking Plaintiff's account number information.

53. Immediately after the call terminated, Plaintiff dialed the telephone number appearing on the caller identification (734-479-3407) which was answered electronically by a recording

16

stating "This is David Wallace with Huron Valley Steel. Please leave a message."

### Call Number 3

54. On June 9, 2021, at approximately 5:22 P.M., Defendants or Defendants's third-party telemarketer initiated or caused to be initiated a call to Plaintiff's residential telephone number (734-XXX-2424).

55. The caller identification number displayed was 844-814-3900, and the caller identification name displayed was V60923225400010.

56. Upon answering the incoming telephone call, Plaintiff observed that there were 4-5 seconds of silence after Plaintiff said "hello" before a prerecorded message began playing stating:

> "Hi there. This is Sidney (ph) calling you from AT&T DirecTV. How are you doing today? Oh, glad to hear that. Well, DirecTV is offering 50% discounts to all of its existing customers. Do you have a minute to speak to I can apply the discount on your account?"

57. The automated recording then began seeking customer specific information from Plaintiff regarding Plaintiff's DirecTv account and account number information.

58. Immediately after the call terminated, Plaintiff dialed the telephone number appearing on the caller identification (844-814-3900) which was answered electronically by a recording stating "Thank you for calling Viasat. For new service for your home, press '1'."

### Call Number 4

59. On September 10, 2021, at approximately 11:33 A.M., Defendants or Defendants's third-party telemarketer initiated or caused to be initiated a call to Plaintiff's residential telephone number (734-XXX-2424).

17

60. The caller identification number displayed was 734-338-7390, and the caller identification name displayed was "MARKETPLACE HOME".

61. Upon answering the incoming telephone call, Plaintiff observed that there were 4-5 seconds of silence after Plaintiff said "hello" before a prerecorded message began playing stating:

> "This is a courtesy call for Spectrum, AT&T and DirecTv customers. We are running a promotion to help our customers lower down their bill. If you are looking to lower down your bill, press '1' and speak to our promotion department. Thank you."

62. To better identify the caller, and for the purpose of making a "do not call" demand, Plaintiff pressed '1', at which point the call disconnected.

63. Immediately after the call terminated, Plaintiff dialed the telephone number appearing on the caller identification (734-338-7390) and received a recording stating the number dialed was not a valid telephone number.

## **Call Number 5**

64. On October 5, 2021, at approximately 4:54 P.M., Defendants or Defendants's third-party telemarketer initiated or caused to be initiated a call to Plaintiff's residential telephone number (734-XXX-2424).

65. The caller identification number displayed was 734-420-1831, and the caller identification name displayed was "SRZ NORTHVILLE".

66. Upon answering the incoming telephone call, Plaintiff observed that there were 4-5 seconds of silence after Plaintiff said "hello" before a prerecorded message began playing stating:

> "This is a courtesy call for Spectrum customers. To discuss your

18

monthly bill, please press '1' to talk to a representative."

67. To better identify the caller, Plaintiff pressed '1' and was immediately connected to a live telemarketer who answered stating "This is Alex. How may I help you?"; Alex did not identify with any company name.

68. Alex inquired whether Plaintiff had Spectrum telephone, television, or Internet services.

69. Alex then began soliciting Plaintiff by offering reduced pricing through "Viasat DirecTv service," explaining that telephone and Internet service would be provided by Viasat, and television service would be provided by DirecTv.

70. At some point in the call, the caller changed to an individual who identified himself as "Mike Wilson".

71. The callers knew Plaintiff's name and address (and, obviously, Plaintiff's residential telephone number), but sought personal identifying information from Plaintiff to "verify" identity.

72. Plaintiff supplied the callers with controlled personal identifying information, including a false birth date, false drivers license number, false license expiration date, and a trap e-mail address; an investigative technique known as a "canary trap."

73. The callers requested Plaintiff's credit card number for the $20 one-time activation fee. Plaintiff provided a controlled credit card number,

74. Immediately after the call terminated, Plaintiff dialed the telephone number appearing on the caller identification (734-420-1831) and received an answering maching for Nash Oldstein, the maintenance services coordinator for Senior Sunrise Living, a senior assisted

19

care facility located in Northville, Michigan.

75. On October 5, 2021, at approximately 5:29 P.M., a $19.95 charge transaction was attempted on Plaintiff's controlled credit card number, with the merchant being identified as "AT&T 800-288-2020."

## Call Number 6

76. On October 5, 2021, at approximately 6:20 P.M., Defendants or Defendants's third-party telemarketer initiated or caused to be initiated a call to Plaintiff's residential telephone number (734-XXX-2424).

77. The caller identification number displayed was 201-596-8882, and the caller identification name displayed was "HASBRCK HTS NJ".

78. Upon answering the incoming telephone call, the caller identified himself as "Mike Wilson" with DirecTv. "Mike" explained that there were have some technical issues with their online portal and needed to reverify some information with Plaintiff. Plaintiff verified the same controlled information which Plaintiff provided during Call Number 5, *supra*.

79. "Mike" then stated that the earlier credit card payment had been declined. Plaintiff stated that he would call his financial institution to ascertain why.

80. Immediately after the call terminated, Plaintiff dialed the telephone number appearing on the caller identification (201-596-8882) and received a recording that the dialed telephone number was not a working number.

## Additional Calls

81. Upon information and belief, Plaintiff has received additional telephone calls from Defendants which, when answered, disconnected or were terminated before Plaintiff could

20

develop identifying information, which telephone calls Defendants are well aware of the dates and times. Plaintiff reserves the right, prior to close of fact discovery, to amend this complaint to include all additional such telephone calls which are discovered.

## COUNT I
## VIOLATION OF THE TCPA - ROBOCALL

82. Plaintiff incorporates the allegations of paragraphs 1 through 81, *supra*.

83. The telephone calls alleged and identified as Call Numbers 3, 4, and 5, *supra*, were in violation of the TCPA, specifically 47 U.S.C. § 227(b)(1)(B) and 47 C.F.R. § 64.1200(a)(3), as Defendants or Defendants's agent initiated a telephone call using an artificial or prerecorded voice to a residential telephone line to deliver a message without the prior express consent of the called party and there being no emergency purpose.

84. Defendants knew they did not have prior express consent to make the call, inasmuch as the artificial or prerecorded voice message was a generic message and not addressed specifically to the called party; therefore, the aforesaid violation of the TCPA was wilful and/or knowing.

## COUNT II
## VIOLATION OF THE TCPA - FAILURE TO IDENTIFY

85. Plaintiff incorporates the allegations of paragraphs 1 through 86, *supra*.

86. The telephones call alleged and identified as Call Number 4 and 5, *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(a)(7)(i)(A) and 47 C.F.R. § 64.1200(b)(1), as the artificial or prerecorded voice message did not, at the beginning of the message, state clearly the identity of the business, individual, or other entity that was responsible for initiating the call.

21

87. The Defendants knew that their artificial or prerecorded voice message did not identify the party responsible for initiating the call, therefore the aforesaid violation of the TCPA was wilful and/or knowing.

## COUNT III
## VIOLATION OF THE TCPA - FAILURE TO PROVIDE TELEPHONE NUMBER

88. Plaintiff incorporates the allegations of paragraphs 1 through 87, *supra.*

89. The telephone calls alleged and identified as Call Numbers 3, 4, and 5, *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(a)(7)(i)(A) and 47 C.F.R. § 64.1200(b)(2), as the artificial or prerecorded voice message did not, during or after the message, state clearly the telephone number of such business or entity.

90. Defendants knew that their artificial or prerecorded voice message did not provide the telephone number, and thus, these violations of the TCPA were wilful and/or knowing.

## COUNT IV
## VIOLATION OF THE TCPA - FAILURE TO PROVIDE OPT OUT

91. Plaintiff incorporates the allegations of paragraphs 1 through 90, *supra.*

92. The telephone calls alleged and identified as Call Numbers 4, 5, and 6, *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(a)(7)(i)(B) and 47 C.F.R. § 64.1200(b)(3), as the artificial or prerecorded voice message did not provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request.

93. Defendants deliberately did not and knew that their artificial or prerecorded voice message did not provide such an opt-out mechanism, therefore the aforesaid violations of the TCPA were wilful and/or knowing.

## COUNT V
### VIOLATION OF THE TCPA - DO NOT CALL (INTERNAL LIST)

94. Plaintiff incorporates the allegations of paragraphs 1 through 93, *supra.*

95. The telephone calls alleged and identified as Call Numbers 1, 2, 3, 4, 5 and 6, *supra,* were in violation of the TCPA, specifically 47 C.F.R. § 64.1200(d)(3), as Defendants or Defendants's made a call for telemarketing purposes to Plaintiff's residential telephone number (734-XXX-2424) despite the fact that Plaintiff had expressly requested that Plaintiff not receive calls from Defendants.

96. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repetitious calls.

## COUNT VI
### VIOLATION OF THE TCPA - INVALID CALLER ID

97. Plaintiff incorporates the allegations of paragraphs 1 through 96, *supra.*

98. The telephone calls alleged and identified as Call Numbers 1, 2, 3, 4, 5 and 6, *supra,* were in violation of the TCPA, specifically 47 C.F.R. § 64.1601(e)(1), as Defendants or Defendants's agent failed to provide caller identification information displaying a telephone number which would permit any individual to make a do-not-call request during regular business hours.

99. Defendants had to take deliberate and overt action to manipulate the caller identification information to provide false information, therefore the aforesaid violations of the TCPA were wilful and/or knowing.

## COUNT VII
### VIOLATION OF THE TCPA - DO NOT CALL (NATIONAL REGISTRY)

23

100. Plaintiff incorporates the allegations of paragraphs 1 through 99, *supra*.

101. The telephone calls alleged and identified as Call Numbers 1, 2, 3, 4, 5 and 6, *supra*, were in violation of the TCPA, specifically 47 C.F.R. § 64.1200(c)(2), as Defendants or Defendants's agent initiated a telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to received telephone solicitations that is maintained by the Federal Government.

102.   Defendants knew that Plaintiff's residential telephone number was on both the National Do Not Call Registry as well as Defendants' internal do-not-call list, yet initiated the clandestinely, using spoofed caller identification, initiated the telephone calls, thus evidence that the violation was wilful and/or knowing.

<div align="center">

**COUNT VIII**
**VIOLATION OF THE MTCCCA**

</div>

103. Plaintiff incorporates the allegations of paragraphs 1 through 102, *supra*.

104.  The telephone calls alleged and identified as Call Numbers 1, 2, 3, 4, 5, and 6, *supra*, were in violation of the MTCCCA, specifically M.C.L. § 484.125(2), as Defendants or Defendants's agent used a telephone line to deliver a recorded message for the purpose of presenting commercial advertising to the subscriber and without the subscriber having knowingly and voluntarily requested, consented, permitted, or authorized the contact from the caller or without the subscriber having knowingly and voluntarily provided his or her telephone number to the caller, or alternatively, Dedendants or Defendants' agent used a telephone line to contact a subscriber at the subscriber's residence to deliver or attempt to deliver instrastate commercial advertising with the caller having activated a feature to block the display of caller

<div align="center">

24

</div>

identification information that would otherwise be available to the subscriber.

## COUNT IX
## VIOLATION OF THE MHSSA

105. Plaintiff incorporates the allegations of paragraphs 1 through 104, supra.

106. The telephone calls alleged and identified as Call Numbers 1, 2, 3, 4, 5, and 6, *supra*, were in violation of the MHSSA, specifically M.C.L. § 445.111a(5), as Defendants or Defendants's agent made a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the federal do-not-call list; M.C.L. § 445.111b(1), and/or Defendants or Defendants's agent did not at the beginning of the telephone solicitation state his or her name and the full name of the organization on whose behalf the call was initiated.

## COUNT X
## VIOLATION OF THE MCPA

107. Plaintiff incorporates the allegations of paragraphs 1 through 106, *supra*.

108. The telephone calls alleged and identified as Call Numbers 1, 2, 3, 4, 5, and 6, *supra*, were each in violation of the MCPA, specifically M.C.L. § 445.903, as Defendants or Defendants's agent made deceptive representations as to the identify of the calling party; used deceptive representations as to the source, sponsorship, approval, or certification of good or services; and/or made false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions.

## PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against the Defendants, jointly and severally, as follows:

A.     1. As to Count I: Damages in the amount of $500.00 for each of the 3 TCPA

violations alleged, for damages of $1,500.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $4,500.00.

2. As to Count II: Damages in the amount of $500.00 for the TCPA violation alleged, which amount shall be trebled because the violations were wilful or knowing; for total damages of $1,500.00.

3. As to Count III: Damages in the amount of $500.00 for each of the 3 TCPA violation alleged, for damages of $1,500.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $4,500.00.

4. As to Count IV: Damages in the amount of $500.00 for each of the 3 TCPA violation alleged, for damages of $1,500.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $4,500.00.

5. As to Count V: Damages in the amount of $500.00 for the 6 TCPA violation alleged, for damages of $3,000.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $9,000.00.

6. As to Count VI: Damages in the amount of $500.00 for the 6 TCPA violation alleged, for damages of $3,000.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $9,000.00.

7. As to Count VII: Damages in the amount of $500.00 for the 6 TCPA violation alleged, for damages of $3,000.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $9,000.00.

8. As to Count VIII: Damages in the amount of $1,000.00 for each of the 6 MTCCCA violations alleged, for total damages of $6,000.00.

26

9. As to Count IX: Damages in the amount of $250.00 for each of the 6 MHSSA violations alleged, for total damages of $1,500.00.

10. As to Count X: Damages in the amount of $250.00 for each of the 6 MCPA violation alleged, for total damages of $1,500.00.

The cumulative total amount of damages claimed in this action is $51,000.00, and in the event of default judgment is the sum certain that will be sought.

B. An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

C. Interest accruing from the date of filing until paid at the statutory rate;

D An injunction enjoining Defendants from initiating any telephone calls to Plaintiff's residential telephone line;

E. A declaratory judgment that the complained of acts of Defendants are unlawful; and,

F. Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: October 7, 2021

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 330-9671
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

27

## VERIFICATION

State of Michigan )
                              ) ss;
County of Washtenaw )

MARK W. DOBRONSKI, being first duly sworn, does depose at state, as follows:

1. I am the Plaintiff in the foregoing matter, of the age of majority, and I have direct and personal knowledge of the facts in dispute.

2. I have read the Complaint in the foregoing matter, and I know the contents thereof. The matters stated in the Complaint are true in substance and in fact, except as to those matters stated to be upon information and belief, and as to those matters I believe them to be true.

3. If sworn as a witness, affiant can testify competently to the facts as set forth in the Complaint.

Further, affiant sayeth naught.

                                              Mark W. Dobronski

Subscribed and sworn to before me this __7th__ day of October, 2021.

Rebecca J Ardrey
Notary Public - State of Michigan
County of Jackson
My Commission Expires 10/25/2026

28

# Exhibit B

**IN THE CIRCUIT COURT FOR THE 22ND JUDICIAL DISTRICT**
**FOR THE STATE OF MICHIGAN, COUNTY OF WASHTENAW**

| | | |
|---|---|---|
| Mark W. Dobronski | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 21-001075-NZ |
| vs. | ) | The Honorable Carol Kuhnke |
| | ) | |
| AT&T Corp. and DIRECTV, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

TO:    Clerk of the Court

TO:    Mark W. Dobronski
       P.O. Box 85547
       Westland, MI 48185-0547
       Tel: 734-330-9671
       Email: markdobronski@yahoo.com

PLEASE TAKE NOTICE that on October 28, 2021, Defendants AT&T Corp. and DIRECTV, LLC filed a Notice of Removal, removing this action from this Court to the United States District Court for the Eastern District of Michigan. A true and correct copy of the Notice of Removal, with attachments, is attached hereto as Exhibit A.

Dated: October 28, 2021                    Respectfully submitted,


                                           By: /s/ Roger P. Meyers
                                           BUSH SEYFERTH PLLC
                                           Roger P Meyers (P73255)
                                           100 W. Big Beaver Rd. Suite 400
                                           Troy, Michigan 48084
                                           (248) 822-7800

                                           *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I, Roger P. Meyers, certify that on October 28, 2021, I caused a copy of the foregoing to

be served upon the following by email and U.S. mail:

> Mark W. Dobronski
> P.O. Box. 85547
> Westland, MI 48185-0547
> Tel: 734-330-9671
> Email: markdobronski@yahoo.com

/s/ Roger P. Meyers

2

744499582.1 28-Oct-21 13:13